UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br>    v.<br>ADRIAN GORDON,<br>    Defendant. | Case No. 13-cr-00764-WHO-1<br><br>**ORDER REGARDING ADRIAN GORDON'S MOTION FOR DNA DISCOVERY**<br><br>Re: Dkt. No. 415 |

Adrian Gordon's motion to compel production of discovery regarding DNA evidence has a tortured procedural history. It was originally filed on July 15, 2015. Dkt. No. 415. The government did not file a timely response; its opposition brief was filed the day before the August 20, 2015 hearing and asserted that the government had already provided four separate rounds of DNA discovery that exceeded its obligations under Fed. R. Crim. P. 16. Dkt. No. 456 at 3-4. I continued the hearing in order to give Gordon an opportunity to reply. Then he filed a far more comprehensive brief, akin to an opening brief, supported by a declaration from Gordon's "Advisory DNA Counsel," Bicka Barlow. I continued the hearing a second time to allow the government a fair opportunity to respond. I finally heard argument on October 15, 2015.

By the time of the argument, many of the issues raised by the motion had been resolved. The government had already provided the "enhanced amplification protocols" sought by Gordon and identified where they could be found. It agreed to provide the assessment report by ASCLAD, the accreditation agency for the Contra Costa County crime laboratory that performed the DNA analysis. It provided summaries of the validation studies for the technologies that were used in Gordon's case and explained why any broader request was unreasonable, with which I agree. Dkt. No. 505 at 2 n.1. To the extent that the government has not yet complied with its representations concerning these issues, I order that it do so immediately. Otherwise, those issues

are moot.

This Order also resolves the three issues that remain: whether the government must produce (1) the DNA of "non-matches," (2) the genetic profile of laboratory personnel, or (3) the DNA of the San Pablo police officer who swabbed the firearm.

To briefly summarize the relevant facts, Gordon is accused of shooting "Victim 3" on May 20, 2011 in San Pablo, California. According to the government, Gordon was identified leaving the scene of the shooting. He was swabbed for DNA five months later. His sample was reviewed by the FBI's Combined DNA Index System (CODIS) database, and by the Contra Costa County crime laboratory. CODIS identified two potential matches, one of whom was Gordon and the other of whom was an unidentified female. The laboratory independently did a direct comparison of Gordon's DNA and the sample from the firearm, confirmed the match, and concluded that Gordon was a contributor to the DNA profile found on the top slide of the firearm used at the shooting.

Gordon seeks the "non-match" DNA sample. The government responds that California Penal Code section 299.5(g) and (h) preclude Gordon from receiving DNA information other than his own. Section 299.5(g) makes a "defendant's DNA and other forensic identification information" available upon court order, and subsection (h) prohibits other disclosures "in order to protect the confidentiality and privacy of database and data bank information." The government further asserts that federal law prohibits disclosure of the records for litigation purposes, citing 42 U.S.C. §§ 14133(b), 14133(c) and 14135e. The government also cites *Haskell v Brown*, 745 F.3d 1269, 1272 (9th. Cir. 2013) (discussing limitations of use of DNA profile) (Smith, J., concurring), and *Brown v. Hedgpeth*, No. 12-cv-00362-RMW, 2015 WL 4747290, at *12 (N.D. Cal. Aug. 11, 2015) (denial of defense access to CODIS database found reasonable in denial of writ of habeas corpus), in support of its argument that access to the DNA evidence in the CODIS database and Contra County Crime laboratory is prohibited by federal and state law. In opposition, Gordon argues that the "other forensic identification information" language in Penal Code section 299.5 could be construed to allow the Court to order non-match DNA evidence, and that in any event the evidence is *Brady* material. He cites no case in support of either argument.

*Hedgpeth* is instructive. In the trial court, the defense sought limited access to the CODIS database to determine how many other people shared the same genetic profile as the defendant. The court denied the motion, apparently on the basis that state statutes prohibit general access to the CODIS database, except for the defendant's own records. On habeas review, the Hon. Ronald M. Whyte noted that California courts have concluded what the government argues here; namely, that the evidence sought by defendant would not change the rarity of a perpetrator's genetic make-up, or, as the court in *People v Xiong*, 215 Cal. App. 4th 1259 (2013), wrote, "[w]hen a suspect is located by whatever means, the frequency and probability of the perpetrator's profile remain the same." *Id.* at 1274. While the database match probability information might have been helpful to influence the jury's decision on how much weight to give the statistical probability of a match, Judge Whyte concluded that denial of the discovery motion was reasonable given that access to the CODIS database was prohibited by state law, there was no indication that the law was arbitrary or without reason, and the defense was able to cross-examine witnesses about potential flaws used in the analysis and argue that the DNA analysis should not be given much weight. *Hedgpath*, 2015 WL 4747290, at *12-13.

While Gordon's request is different here, the analysis is similar and the result is the same. Given the DNA discovery already produced, Gordon has the means to prepare his defense and to cross-examine prosecution witnesses effectively. Lacking any authority in support of Gordon's interpretation of Penal Code section 299.5, or that the "non-match" DNA is *Brady* material, I deny this part of his motion.

Under the same authority, the government opposes Gordon's other requests. He seeks the genetic profiles of lab personnel and to have the police officer who swabbed the firearm submit to a cheek swab. There are reasons in addition to the lack of authority provided by Gordon to deny these requests. No contamination has been alleged in this case. The Contra Costa laboratory searched the DNA against the profiles of lab personnel as part of its quality assurance process, and no match was reported. The lab personnel have a right to the privacy of their genetic profiles. So does the officer. He swabbed the firearm on May 23, 2011, more than five months before Gordon was swabbed for DNA. Even if the law allowed Gordon's requests (and it appears it does not),

their materiality is unexplained.  They are denied.

**IT IS SO ORDERED**.

Dated: November 25, 2015

WILLIAM H. ORRICK
United States District Judge

4