UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>        v.<br><br>ADRIAN GORDON,<br><br>    Defendant.<br><br>───────────────────────────<br><br>ADRIAN GORDON,<br><br>    Petitioner,<br><br>        v.<br><br>UNITED STATES OF AMERICA,<br><br>    Respondent. | Case No. 13-cr-00764-WHO-5<br><br>**AMENDED ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>Re: Dkt. No. 2582 |

Petitioner Adrian Gordon, pro se, asserts two claims for habeas relief under 28 U.S.C. § 2255.[1] In 2018, I sentenced Gordon to 324 months in custody after his conviction for being a member of the Central Divisadero Playas (hereafter, "CDP"), a racketeering enterprise, attempted murder and related crimes. The Ninth Circuit affirmed his convictions. *United States v. Heard*, 2022 WL 2662882 (9th Cir. Jul. 11, 2022). Gordon now seeks habeas relief on two grounds: (1) that he received ineffective assistance of counsel when his trial counsel mishandled an alibi that he

---

[1] Prisoner pro se pleadings are given the benefit of a liberal construction. *Erikson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007) ("A document filed pro se is to be liberally construed."). "However, in construing pro se petitions liberally, the petitioner is not entitled to the benefit of every conceivable doubt." *Porter v. Ollison*, 620 F.3d 952, 958 (9th Cir. 2010). The court is merely obligated to draw reasonable factual inferences in the petitioner's favor. *Id.* (citing *McKinney v. De Bord*, 507 F.2d 501, 504 (9th Cir. 1974)).

believes exculpated him from the homicide of Donte Levexier, and (2) that under the United States Supreme Court's decisions in *United States v. Taylor*, 596 U.S. 845 (2022), and *Borden v. United States*, 593 U.S. 420 (2021), attempted murder and assault with a dangerous weapon (Counts Nine and Ten) are no longer "crime[s] of violence" under 18 U.S.C. § 924(c), so he is actually innocent of Count Eleven. Neither claim prevails. His petition is denied.

## BACKGROUND

The Second Superseding Indictment charged Gordon with racketeering conspiracy in violation of 18 U.S.C. § 1962(d) (Count One); attempted murder in aid of racketeering of Patrick McCree in violation of 18 U.S.C. § 1959(a)(5) (Count Nine); assault with a dangerous weapon in aid of racketeering of Patrick McCree in violation of 18 U.S.C. § 1959(a)(3) (Count Ten); and use of a firearm in a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A) (Count Eleven). Dkt. No. 139 (Second Superseding Indictment). With respect to the "crime of violence" identified in Count Eleven, the Second Superseding Indictment identified "the attempted murder in aid of racketeering and assault with a dangerous weapon in aid of racketeering of [Patrick McCree] as charged in Counts Nine and Ten[]." Dkt. No. 139 ¶ 39.

The jury returned a verdict of "guilty" on all counts on March 5, 2018. Dkt. No. 1765. On June 29, 2018, I sentenced Gordon to 324 months in custody: 204 months for the RICO conspiracy count (Count One); 204 months for the assault with a dangerous weapon (Count Ten), to run concurrent with Count One; 120 months for the attempted murder in aid of racketeering (Count Nine), also to run concurrent with Count One; and 120 months for the use of a firearm in a crime of violence (Count Eleven), which was consecutive to the 204 month term for Counts One and Ten. Dkt. No. 1905 (Judgment); Dkt. No. 1947 at 31-32 (Sentencing Transcript).

Gordon filed his appeal on March 20, 2020. *See United States v. Charles Heard, et al.*, No. 18-10258 (9th Cir.), Dkt. 24. On July 11, 2022, the Ninth Circuit denied the appeal and affirmed my decision. *United States v. Heard*, 2022 WL 2662882 (9th Cir. Jul. 11, 2022).

## LEGAL STANDARD

I.  **28 U.S.C. § 2255**

Under 28 U.S.C. § 2255, "[a] prisoner in custody under sentence of a court established by

Act of Congress . . . may move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255(a). The statute authorizes the sentencing court to grant relief if it concludes "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." *Id*. If the court finds that relief is warranted, it must vacate and set aside the judgment, and then do one of four things: (1) discharge the prisoner, (2) resentence him, (3) grant a new trial, or (4) "correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b); *United States v. Barron*, 172 F.3d 1153, 1157 (9th Cir. 1999). The burden is on the petitioner to establish his claim for relief by a preponderance of the evidence. *See Farrow v. United States*, 580 F.2d 1339, 1355 (9th Cir. 1978); 3 Fed. Prac. & Proc. Crim. § 635 (4th ed. 2015).

To prevail on a § 2255 motion, "a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). To set aside the convictions, Gordon had to show that a constitutional error had "a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)); *see also United States v. Montalvo*, 331 F.3d 1052, 1058 (9th Cir. 2003) ("*Brecht*'s harmless error standard applies to habeas cases under section 2255").

## II.     INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment to the United States Constitution guarantees the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685–86, (1984). A petitioner claiming ineffective assistance of counsel must show two things: (1) deficient performance; and (2) prejudice. *Strickland*, 466 U.S. at 687–88.

Deficient performance requires a showing that counsel's representation fell below an "objective standard of reasonableness," as measured by prevailing professional norms, and considering all the circumstances. *Id*. There is a high measure of deference afforded to counsel by a reviewing court; there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 688-89.

3

1    Prejudice requires a showing that there was a "reasonable probability that, but for
2    counsel's unprofessional errors, the result of the proceeding would have been different. A
3    reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* at
4    694. It is insufficient to show that "errors had some conceivable effect on the outcome of the
5    proceeding." *Id.* at 693. To show prejudice, the petitioner must show that counsel's errors were so
6    grave that they "deprive[d] the defendant of a fair trial[.]" *Id.* at 687.

**DISCUSSION**

**I.    INEFFECTIVE ASSISTANCE OF COUNSEL**

Gordon contends that he received ineffective assistance of counsel because his trial lawyer did not "review available discovery materials and conduct minimally required investigation into [Gordon's] alibi for the Levexier murder," and as a result, failed to "prepare and file a properly supported motion in limine…seeking to exclude any mention by the prosecution of [Gordon] as a potential suspect in [the Levexier murder]." Motion to Vacate Under 28 U.S.C. § 2255 ("Petition") [Dkt. No. 2582] 6-8. To meet the *Strickland* standard, Gordon would have to show that his trial counsel committed errors so serious that he lacked functioning counsel as is guaranteed by the Sixth Amendment. *See Strickland*, 466 U.S. at 687. A careful review of the record, and my own recollection as the trial judge, confirm that Gordon did not lack functioning counsel.

On the night of the Levexier murder in 2011, a CDP member took a cell phone video (which was eventually introduced into evidence) showing the owner of the cell phone, Vernon Carmichael, and Gordon together inside 1458 Grove Street in San Francisco, a location where CDP members were known to congregate. *See* November 16, 2017, Trial Transcript ("TR") 1269-1271 (admission of Defense Trial Exhibit 18). Levexier was murdered in San Pablo, more than 14 miles and across the Bay Bridge from 1458 Grove Street. *See* Trial Ex. 18. The government used evidence of the Levexier murder as part of its case to show that CDP existed as a racketeering enterprise. Gordon was not charged with the Levexier murder, but the government suggested that he was at the scene and that he may have killed Levexier. TR 56:6-16 (Opening Statement).

According to Gordon, sometime in August 2017 his trial counsel received the video but did

1    not immediately review it.  On August 11, 2017, she filed a motion in limine (Dkt. No. 1239) that

2    sought to exclude all evidence of the Levexier homicide from Gordon's trial.  The motion

3    contained no mention of the cell phone video alibi.  *See generally* Dkt. No. 1239.

4           To start, if trial counsel received the alibi video on August 1, 2017, and did not review it in

5    time to include it in her motion in limine, which was filed on August 11, 2017, that delay would

6    not take her below an "objective standard of reasonableness."  The evidence in this prosecution

7    was voluminous, and trial counsel marshalled much of it for the purpose of her 25-page motion in

8    limine seeking exclusion of evidence related to the Levexier murder.  *See generally* Dkt. No 1239.

9           Regardless of whether Gorton's counsel should have been aware of the video when the

10   motion in limine was filed or even argued, she certainly knew about it by the time of trial and

11   made good use of it.  She introduced it as evidence and showed it to the jury on several occasions

12   (TR 1272-73, 2182-83, 2878, 8309, 8416).  She called witnesses to testify as to its authenticity and

13   context, cross examined one of the government's witnesses to establish that the video depicted

14   1458 Grove Street (TR 8308-09, 2878), used it to establish that Gordon was far from the scene of

15   the crime on the night that Levexier was killed (TR 1274), and referenced it in her closing

16   argument as key evidence that Gordon was not responsible for Levexier's murder (TR 9584,

17   9587).  Even assuming that Gordon's timeline is correct, and counsel had not viewed the video

18   when she filed her motion in limine on August 11, 2017, the omission does not amount to

19   ineffective assistance because she put the video to such thorough use in front of the jury.

20          Moreover, no prejudice arose from the omission of this evidence in the motion in limine.

21   Levexier was allegedly a member of a rival gang and his murder was part of the pattern evidence

22   to establish CDP as a racketeering enterprise; whether or not Gordon was involved in the murder,

23   evidence regarding the murder was admissible.  Dkt. No. 1343 at 19:10-14.  As I held in my

24   September 28, 2017, order resolving motions in limine (Dkt. No. 1343), the sufficiency of the

25   evidence that Gordon was involved in the Levexier homicide was for the jury to decide. *See* Dkt.

26   No. 1343 at 19:2-14.

27          The video alibi was one piece of evidence among many that the jury was asked to consider

28   in determining whether Gordon was involved with CDP.  The jury was presented with evidence

from Gordon's social media platforms that suggested he was affiliated with the CDP gang, *see* Trial Exs. 87, 88, and text messages from Gordon that indicated the same, *see* Trial Ex. 190a, 632. It was shown photos of Gordon's tattoos, which the government argued were CDP-affiliated, *see* Trial Exs. 5051, 1238, and evidence of his other criminal activity with other known CDP members, *see e.g.* TR 1118, 1122-23, 5958, 5943-48, 6738, 4630.  Cooperating witness J.B. testified that Gordon was a CDP member (TR 4430), and that Gordon had shot at rival gang members before (TR 4757).  There was proof beyond a reasonable doubt concerning his attempted murder of Patrick McCree.  All of this was admissible evidence, as was the alibi video, and it was for the jury to decide the significance of that evidence.[2]

\*\*\*

The Sixth Amendment secures the rights of criminal defendants to representation of "reasonable competence" not "perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003).  Gordon's trial counsel exhibited more than reasonable competence; her advocacy was thorough.  Gordon's ineffective assistance of counsel claim does not prevail.[3]

## II. *TAYLOR* AND *BORDEN*

Gordon was convicted of Count Eleven based on what he says is now outdated law.  He argues that under the Supreme Court's decisions in *Taylor* and *Borden*, attempted murder and assault with a dangerous weapon (Counts Nine and Ten) respectively are no longer crimes of violence under 18 U.S.C. § 924(c), meaning that he is actually innocent of Count Eleven.  He did not raise these claims on direct appeal; to overcome procedural default, he must show cause and prejudice for his procedural default, or he must show actual innocence.

---

[2] The Ninth Circuit confirmed that I did not abuse my discretion in admitting evidence of the uncharged Levexier murder.  *Heard*, 2022 WL 2662882 at \*3.

[3] No evidentiary hearing is necessary because even assuming all of the facts that Gordon has pleaded to be true, he has not shown that his trial counsel provided ineffective assistance, much less that he was prejudiced by her conduct.  *See Baumann v. United States*, 692 F.2d 565, 571 (9th Cir. 1982); *United States v. Leonti*, 326 F.3d 1111, 1121 (9th Cir. 2003).

6

### A. Procedural Default

"The general rule in federal habeas cases is that a defendant who fails to raise a claim on direct appeal is barred from raising it on collateral review." *Sanchez-Lamas v. Oregon*, 548 U.S. 331, 350–51 (2006). A defendant can overcome that bar if he shows cause and prejudice for his procedural default or actual innocence. *See id*. at 351; *see also United States v. Ratigan*, 351 F.3d 957, 962 (9th Cir. 2003) ("A § 2255 movant procedurally defaults his claims by not raising them on direct appeal and not showing cause and prejudice or actual innocence in response to the default."); *Murray v. Carrier*, 477 U.S. 478, 485, 496, 106 S.Ct. 2639, 2643-2644 (1986) (holding that where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either "cause" and actual "prejudice," or that he is "actually innocent").

Gordon raised neither his *Taylor* nor his *Borden* arguments on direct appeal. The Ninth Circuit addressed this in part when Gordon attempted to raise his *Taylor* argument for the first time in his supplemental appellate briefing. *Heard*, 2022 WL 2662882 at *7. While the *Taylor* decision was unavailable at the time of the initial briefing, the court noted that "the argument that attempted murder under California law does not constitute a crime of violence [under Section 924(c)] *was* available to Gordon and he did not raise it[,]" meaning that Gordon waived that argument. *Heard*, at *7 (emphasis added). What the Ninth Circuit observed with respect to Gordon's *Taylor* argument applies to his *Borden* argument. While the *Borden* decision was also unavailable when Heard filed his direct appeal, the argument that assault with a dangerous weapon does not constitute a crime of violence under Section 924(c) *was* available to him, and he did not raise it until habeas proceedings.

Gordon does not try to show cause for failing to raise these arguments sooner. Instead, to overcome procedural default, he asserts actual innocence of Count Eleven. *See Murray*, 477 U.S. at 496, 106 S.Ct. at 2649 (a defendant may overcome procedural default by demonstrating that he is "actually innocent"); *see Bousley v. U.S.*, 523 U.S. 614, 624, 118 S.Ct. 1604, 1611 (1998) ("[T]o establish actual innocence, petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'") (internal citations

7

omitted).

Actual innocence as a mechanism for overcoming procedural default applies where a petitioner asserts *factual* innocence. *See Bousley*, 523 U.S. at 623 ("'actual innocence' means factual innocence, not mere legal insufficiency'") (citing *Sawyer v. Whitley,* 505 U.S. 333, 340, 112 S.Ct. 2514, 2518-2519 (1992) (emphasizing that the "miscarriage of justice" exception that allows defendants to overcome procedural default where they have demonstrated "actual innocence" "is concerned with actual as compared to legal innocence[.]")). Gordon does not assert that he is factually innocent; he argues that considering *Borden* and *Taylor*, he was convicted under a legal theory that no longer stands.

### B. Merits

Even if Gordon's claims were not procedurally defaulted, they would fail on their merits.

#### 1. Attempted Murder Qualifies as a "Crime of Violence"

Gordon argues that the Supreme Court's decision in *Taylor*, which held that attempted Hobbs Act robbery does not qualify as a crime of violence under § 924(c)(3)(A), means that a person can attempt to kill without attempting to use force, and as such, his conviction for Count Nine (attempted murder) does not qualify as a "crime of violence" in the wake of *Taylor*. The Ninth Circuit has already considered and rejected this argument. *See Dorsey v. United States*, 76 F.4th 1277, 1284 (9th Cir. 2023) ("We join our sister circuits in concluding that *Taylor* does not require us to reconsider our precedent holding that attempted killing is a crime of violence.") (collecting cases where courts have held that attempted murder remains a crime of violence in the wake of *Taylor*); *see also United States v. Howald*, 104 F.4th 732, 743 (9th Cir. 2024) (considering whether attempted murder under the Hate Crimes Prevention Act, 18 U.S.C. § 249(a)(2) involved a crime of violence, and holding that it did, because "[a]n attempt to kill in violation of § 249(a)(2)(A)(ii)(II) necessarily involves 'as an element the use, attempted use, or threatened use of physical force against the person or property of another' per [18 U.S.C. § 924(c)(3)(A)," meaning that the defendant's conviction under the Hate Crimes Prevention Act was "categorically a crime of violence.").

Gordon was convicted of attempted murder in aid of racketeering (Count Nine), which

8

served as one of the predicate offenses for his conviction under Section 924(c). The jury was instructed that to find him guilty of Count Nine, they must find, among the other Section 924(c) elements, that he acted with the intent to kill another person. *See* Dkt. No. 1768 at 62 (Jury Instruction No. 49) ("In order to convict the defendant ADRIAN GORDON for attempted murder in aid of racketeering, the government must prove beyond a reasonable doubt four elements . . . [t]hird, the defendant attempted to murder the victim, meaning he intended to kill the victim and did something that was a substantial step toward killing the victim. I previously explained for you the elements of attempted murder in the discussion of Count One."); *see also id.* at 47 (Jury Instruction No. 34) ("Attempted murder consists of taking at least one direct but ineffective step toward killing another person and acting with the intent to kill that other person.").[4]

The Ninth Circuit clarified in *Dorsey* that not all attempt crimes are categorically crimes of violence, but attempted murder is because it requires a substantial step taken with a specific intent to kill, satisfying the mental state requirement in Section 924(c).[5] *See Dorsey*, 76 F.4th at 1283-84 (quoting *United States v. Studhorse*, 883 F.3d 1198, 1206 (9th Cir. 2018) ("'Even if [the

---

[4] In a recent decision by the Ninth Circuit concerning a habeas petition filed by one of Gordon's co-defendants who pleaded guilty, Reginald Elmore, the court ruled that where the predicate state-law violation supplies the definition of murder for a VICAR offense (as is the case here) courts should look through to the elements of that state-level violation to determine whether the VICAR offense, as charged or convicted, constitutes a crime of violence under Section 924(c)(3)(A). *See United States v. Elmore*, No. 22-16539 (9th Cir. Oct. 8, 2024). The jury instructions in Gordon's case reflected the elements of attempted murder under California state law because the Second Superseding Indictment charged Gordon with violations of state law. *See* Dkt. No. 139 (Count Nine) (citing California Penal Code Sections 187, 188, 189, 21a, 31-33, and 664). To return a verdict of "guilty" on Count Nine, the jury had to find beyond a reasonable doubt that Gordon met each element of attempted murder as laid out by the California Penal Code.

[5] Even though Gordon's *Taylor* argument was ultimately procedurally defaulted, the Ninth Circuit considered its merits anyway, observing that even if the conviction for attempted murder in the aid of racketeering (Count Nine) *was* considered void under *Taylor* (which it would not be, in light of the more recent Ninth Circuit decision in *Dorsey*), the Section 924(c) count (Count Eleven) against Gordon was *also* based on assault with a dangerous weapon in aid of racketeering (Count Ten), a count for which he was also convicted, meaning that his conviction is still lawful because the non-attempt predicate offense definitively qualifies as a crime of violence. *See Heard*, at *7 (citing *United States v. Gobert*, 943 F.3d 878, 880 n.2 (9th Cir. 2019) (explaining that when two counts "served as predicate crimes of violence for [the] § 924(c) conviction[, the] §924(c) conviction [was] lawful so long as either offense . . . qualifie[d] as a crime of violence" and concluding that "assault with a dangerous weapon is a crime of violence[.]"). It conducted this analysis before the decision in *Dorsey* was issued, which considered and rejected an argument akin to Gordon's *Taylor* argument outright.

9

defendant] took only a slight, nonviolent act with the intent to cause another's death, that act would pose a threat of violent force sufficient to satisfy' the definition of a crime of violence.") (internal citations omitted)).  And in *Howald*, the Ninth Circuit explained that "*Taylor*'s holding turned on the fact that a person can commit Hobbs Act robbery by attempting to threaten force and therefore never getting 'to the point of threatening the use of force against anyone[]' . . . [whereas] for Howald's offense of conviction, the government must prove that the defendant attempted to kill another person." *Howald*, 104 F.3 at 743 (cleaned up) (internal citations omitted).

Because Count Nine required the jury to find that Gordon attempted to kill someone, meaning that he acted with an intent to kill and took a substantial step toward killing, Count Nine qualifies as a "crime of violence" under Section 924(c); *Taylor* does not undermine that conclusion.

### 2. Assault with a Dangerous Weapon Qualifies as a "Crime of Violence"

Finally, Gordon argues that the Supreme Court's decision in *Borden*, which held that crimes with a mens rea of recklessness do not qualify as violent felonies under the Armed Career Criminal Act ("ACCA"), means that assault with a dangerous weapon does not qualify as a predicate "crime of violence" for the purpose of convicting him under Section 924(c) (Count Eleven).  Petition at 13-17; *Borden*, 593 U.S. at 445.

Gordon's conviction for assault with a dangerous weapon in aid of racketeering (Count Ten) was based on the jury finding beyond a reasonable doubt the following:

> First, the defendant *did an act with a firearm or other deadly weapon that by its nature would directly and probably result in the application of force to a person*; Second, the defendant did that act willfully; Third, when the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone; and Fourth, *when the defendant acted, he had the present ability to apply force likely to produce a great bodily injury with a firearm or other deadly weapon to a person*. Someone commits an act "willfully" when he does it willingly or on purpose.

Dkt. No. 1768 at 63 (Jury Instruction No. 50) (emphasis added).

In *Borden*, the Supreme Court distinguished between violent felonies, which are "crimes of violence," and reckless offenses, which are not: it pointed out that the former involve physical

10

force directed *against* the person of another, meaning that the defendant acted with some level of intent. *See Borden*, 593 U.S. at 429-430. Borden's reckless action, the Court held, did not constitute the use of force directed *against* another person, and therefore did not qualify as a crime of violence, because he lacked the requisite mens rea. *Id.* at 432-33.

The same is not true in Gordon's case. Gordon possessed the requisite mens rea to be convicted of a "crime of violence." The jury found that he "[acted] with a firearm or other deadly weapon that by its nature would directly and probably result in the application of force to a person," and that he did so "willfully". *See* Jury Instruction No. 50. His conviction for assault with a dangerous weapon (Count Ten) qualifies as a crime of violence even after *Borden*, and properly served as one of the predicate offenses for Count Eleven.[6],[7]

***

Gordon's arguments that in the wake of *Taylor* and *Borden*, attempted murder and assault with a dangerous weapon no longer qualify as "crimes of violence" for the purposes of Section 924(c) are both procedurally barred and fails on the merits.

### CERTIFICATE OF APPEALABILITY

Before a defendant may appeal the denial of a § 2255 motion, a "Certificate of Appealability" must issue. Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"), the right to appeal the denial of a § 2255 motion is governed by the certificate of appealability requirements of 28 U.S.C. § 2253(c). 28 U.S.C. § 2253(c)(2) provides that a certificate of appealability may issue only if the applicant has made a

---

[6] As the Ninth Circuit noted in its decision, both Count Nine and Count Ten served as predicate offenses for Count Eleven. *See Heard*, at *7; *see also supra* n.4.

[7] As was the case for his attempted murder charge, the elements of Gordon's charge for assault with a dangerous weapon reflected California state law. The Second Superseding Indictment referenced California Penal Code Section 245(a)(2). *See* Dkt. No. 139 (Count Ten). Accordingly, the instruction for Count Ten required the jury to consider the elements of assault with a dangerous weapon as they are laid out in the California Penal Code §§ 245(a)(2), 875. In the context of ruling on this petition, I considered the elements of the state-law violation, as they were given to the jury, and determined that the VICAR offense constituted a crime of violence under Section 924(c). This is consistent with the Supreme Court's ruling in *Borden* and the Ninth Circuit's recent ruling in *United States v. Elmore*, No. 22-16539 (9th Cir. Oct. 8, 2024). *See supra* n.4.

11

substantial showing of the denial of a constitutional right:

> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
> ....
> (B) the final order in a proceeding under section 2255.
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c).

A "substantial showing of the denial of a constitutional right" requires a demonstration "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (internal citations omitted).

In light of the significance of his sentence, I grant Gordon a certificate of appealability for all of his claims.

## CONCLUSION

For the foregoing reasons, Gordon's petition is DENIED. A certificate of appealability will issue for all of his claims.

**IT IS SO ORDERED.**

Dated: December 18, 2024

William H. Orrick
United States District Judge